UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ROBERT MARTIN,

        Petitioner,

v.

                Case No. 8:13-cv-1342-T-33AEP
                       8:10-cr-305-T-33AEP

UNITED STATES OF AMERICA,

        Respondent.

_____/

**ORDER**

This matter comes before the Court pursuant to Petitioner Robert Martin's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. # 1), filed on May 20, 2013.  On October 3, 2013, the Government filed a Response in Opposition to the Motion (Doc. # 11), to which Martin filed a Reply (Doc. # 16) on January 30, 2014.  A review of the record demonstrates that, for the following reasons, the Motion to Vacate must be denied.

Furthermore, pursuant to Rule 8(a) of the Rules Governing Section 2255 Proceedings, this Court has determined that an evidentiary hearing is not necessary for the adjudication of this Section 2255 Motion.  No hearing is required when the record establishes conclusively that a § 2255 motion lacks merit.  United States v. Lagrone, 727 F.2d 1037, 1038 (11th Cir. 1984).  Furthermore, "A district court need not conduct an evidentiary hearing 'where the petitioner's allegations are

affirmatively contradicted by the record, or the claims are patently frivolous.'" <u>Pericles v. United States</u>, No. 12-14505, 2014 U.S. App. LEXIS 9767, at *11, n.4 (11th Cir. March 28, 2014)(citing <u>Aron v. United States</u>, 291 F.3d 708, 715 (11th Cir. 2002)).

## **PROCEDURAL HISTORY**

On July 21, 2010, the grand jury returned a three-count indictment against Martin. (Criminal Doc. # 1).  Count one charged that Martin distributed 500 grams or more of methamphetamine, count two charged that Martin, having been previously been convicted of a felony, possessed a firearm in and affecting interstate commerce, and count three charged that Martin possessed methamphetamine.

On November 30, 2010, Martin's then counsel, Stephen Baer, Esq. filed a motion to suppress (Criminal Doc. # 27) based on the fact that the search warrant leading to the discovery of the methamphetamine and firearm charged in the indictment was not signed by a neutral and detached magistrate and failed to sufficiently describe the place to be searched and the items to be seized.  Shortly thereafter, on December 8, 2010, Martin signed a plea agreement as to count two of the indictment. (Criminal Doc. # 28).  That plea agreement called for the dismissal of counts one and three of the indictment.

(Id.).  As described in the parties' current submissions, had Martin gone forward under that plea agreement, Martin's maximum sentence would have been ten years imprisonment.

However, during the December 17, 2010, change of plea hearing set before the Honorable Anthony E. Porcelli, United States Magistrate Judge, Martin notified the Court that he desired to retain new counsel, Tom Ostrander, Esq. (Criminal Doc. # 30).  The Court continued the change of plea hearing to January 4, 2011; however, at that hearing, Martin indicated that he no longer agreed to the signed plea agreement and desired to proceed on the pending motion to suppress. (Criminal Doc. # 35).  During the same hearing, the prosecutor and Judge Porcelli pointed out the ramifications of Martin's decision to abandon his previously entered plea agreement. The prosecutor, James Muench, Esq., indicated:

> [A]t some point if things don't go well for this defendant, I could imagine he could be very dissatisfied with what happens and claim that he didn't realize the ramifications and possibly blame his attorney.  I do want to advise the Court that since the plea is not going through, I anticipate I will file an 851, and I think if convicted as charged, he would be looking at a mandatory life sentence.  I think it's important he realize that. He has two prior felony drug offenses, and he is charged with a ten-to-life distribution of methamphetamine offense.

(Criminal Doc. # 83 at 4-5).

After the prosecutor stated his intent to file an 851

3

enhancement, Martin's attorney counseled Martin about the prosecutor's statement off the record and then indicated on the record: "I wanted to make sure my client understood the significance of the statement that my esteemed colleague just made to the Court." (Id. at 5). Thereafter, the Court underscored the significance of Martin's decision to go forward on the motion to suppress and highlighted that, under the signed plea agreement, Martin would face a maximum of ten years imprisonment, but if convicted on all three counts of the indictment, Martin could face life imprisonment:

> Mr. Martin, let me explain to you what's happening. As you indicated to me, you do not want to enter a plea pursuant to the plea agreement that has been filed and proceed forward on your motion to suppress. What I'm going to do is emphasize for you what the prosecutor stated so you understand that, and that it's clear on the record that you understand it.
> At the last hearing, the prosecutor stated it is the government's intent that if you proceed forward on the motion to suppress, they will be withdrawing their offer of the plea agreement and not submitting it to you again. Further, what the prosecutor just stated now is that, if this case goes forward and the government is successful . . . it's their intent to enhance you under the statute. That enhancement would carry a maximum mandatory minimum sentence of life imprisonment based on your prior convictions. . . . [Y]our sentence would be all but guaranteed to be life. . . . Do you understand that sir?

(Id. at 6-7).

Martin agreed that he understood the ramifications of

backing out of the signed plea agreement. (<u>Id.</u> at 7).  The hearing did not end there.  The Court continued to caution Martin about how moving forward could result in a lengthy sentence, and the prosecutor further remarked:

> I'm doing this for his benefit.  I don't want him needlessly to spend the rest of his life in prison. Right now the statutory max, the most time he could get is ten years.  A judge couldn't do more than ten years.  . . . [H]e's taking a tremendous risk. If he wants to do it, that's fine.  I want him doing it knowingly, and I certainly want him not to, at some point down the road, claim that he had ineffective assistance of counsel because he didn't realize.

(<u>Id.</u> at 8).

On January 19, 2011, Judge Porcelli held an evidentiary hearing on the motion to suppress. (Criminal Doc. # 40).  On February 7, 2011, Judge Porcelli filed a report and recommendation in which he recommended that the motion to suppress be denied. (Criminal Doc. # 45).  Therein, Judge Porcelli recognized that the search warrant was missing the signature of the judge who reviewed the search warrant; however, Judge Porcelli determined that the warrant was nonetheless valid because that judge orally approved the search warrant after finding probable cause to authorize the search warrant. (<u>Id.</u> at 5).

Specifically, the evidence presented at the suppression hearing revealed that Deputy Kenneth Hill with the Polk County

Sheriff's Office presented the search warrant to the duty judge, Judge Green in Polk County, Florida, in person, and Judge Green orally approved the search warrant, found probable cause for the issuance of the search warrant, placed Deputy Hill under oath and had Deputy Hill sign the search warrant, made notes on the search warrant, dated the search warrant, and her assistant processed the search warrant. (Id.). Due to an error, Judge Green simply failed to include her signature on the appropriate section of the search warrant. (Id.). Judge Porcelli determined that the missing signature was not fatal to the validity of the search warrant and noted that "the face of the warrant reveal[ed] a number of other imprimaturs of judicial authority." (Id. at 8). Ultimately, Judge Porcelli determined that the search warrant complied with the requirements of the Fourth Amendment to the United States Constitution. (Id. at 11).

On February 23, 2011, this Court adopted the report and recommendation and denied the motion to suppress. (Criminal Doc. # 47). Two days later, Martin signed a different version of the plea agreement, in which he pled guilty to counts one and two of the indictment. (Doc. # 49). That plea agreement contained an appeal waiver that follows:

> The defendant agrees that this Court has jurisdiction and authority to impose any sentence

6

> up to the statutory maximum and expressly waives the right to appeal defendant's sentence or to challenge it collaterally on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided however, that if the government exercises its right to appeal the sentence imposed . . . then the defendant is released from his waiver and may appeal the sentence.

(Id. at 11-12).

Judge Porcelli held a change of plea hearing on February 28, 2011. (Criminal Doc. # 50). During that hearing, Martin answered in the affirmative when Judge Porcelli inquired as to (1) whether Attorney Ostrander discussed all available options with Martin; (2) whether Attorney Ostrander did everything Martin asked him to do; and (3) whether Martin was satisfied with the advice and representation provided by Attorney Ostrander. (Criminal Doc. # 74 at 11). In addition, Martin indicated that he was pleading guilty because he was, in fact, guilty. (Id. at 35). Judge Porcelli determined that Martin knowingly, intelligently, and voluntarily entered his plea of guilty and recommended that this Court accept Martin's plea. (Id. at 36).

7

On March 16, 2011, this Court accepted Martin's plea of guilty and adjudication of guilt as to counts one and two of the indictment. (Criminal Doc. # 54).   Due to Martin's criminal history, the Government had the option of filing an enhancement, which would have resulted in Martin receiving a mandatory life sentence in prison.   However, the Government exercised its discretion by not seeking such an enhancement. (Criminal Doc. # 70 at 21-22).   On May 24, 2011, the Court sentenced Martin to 188 months imprisonment as to count one and 120 months imprisonment as to count two, to run concurrently. (Criminal Doc. ## 55, 58). Tellingly, at the sentencing proceeding, Prosecutor Muench explained:

> I tried to explain to him.  I said, I realize you want to pursue your motion to suppress.  Do you realize that you are looking at a ten-year minimum mandatory? And he has two prior drug offenses.  If I filed an 851 . . . he'd be looking at mandatory life.  I didn't file the 851 because frankly I just – I couldn't see him going away for life.  I pleaded with him, with Mr. Ostrander's permission, listen, we'll let you plead just to the gun charge. . . . I did this in the presence of Mr. Ostrander. He decided frankly I think against Mr. Ostrander's advice that he wanted to pursue his motion to suppress.  And I let him know, if you do that, you're looking at an 851 and mandatory life.  Don't do that.  He did it. He went to the suppression hearing.  He lost.  Despite that I had threatened in a very nice fashion to file an 851, I didn't do it.

(Criminal Doc. # 70 at 6-7).   Attorney Ostrander also indicated at the sentencing that "I could not tell my client

8

to withdraw the plea. That's what [is] significant." (<u>Id.</u> at 11).

Martin filed an appeal on June 3, 2011. (Criminal Doc. # 59). Thereafter, Attorney Ostrander moved to withdraw from further representation of Martin and filed a brief pursuant to <u>Anders v. California</u>, 386 U.S. 738 (1967). (Criminal Doc. # 78 at 1). On June 7, 2012, the Eleventh Circuit affirmed Martin's conviction and sentence "[b]ecause an independent examination of the entire record reveals no arguable issues of merit." (<u>Id.</u>). Thereafter, on May 20, 2013, Martin timely filed the instant § 2255 Motion.

<u>**COGNIZABILITY**</u>

In the Motion, Martin challenges his sentence as unconstitutional based on receiving ineffective assistance of counsel. Ineffective assistance claims are generally cognizable under 28 U.S.C. § 2255. See <u>Lynn v. United States</u>, 365 F.3d 1225, 1234 n. 17 (11th Cir. 2004)(ineffective assistance claims should be decided in section 2255 proceedings).

<u>**INEFFECTIVE ASSISTANCE OF COUNSEL STANDARD**</u>

To prevail on a claim of ineffective assistance of trial or appellate counsel, a defendant must meet the two-part test set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).

Strickland's two-part test requires a defendant to demonstrate that counsel's performance was deficient and "there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id.  However, if a claim fails to satisfy the prejudice component, the court need not make a ruling on the performance component.

The two-pronged Strickland test is applicable to ineffective assistance of counsel claims arising out of the plea process. Hill v. Lockhart, 474 U.S. 52, 57 (1985). As applied to the plea situation, the first prong of Strickland remains the same in that the attorney's conduct must fall within the range of reasonable conduct. Hill, 474 U.S. at 58. Counsel owes a lesser duty to a client who pleads guilty than to one who goes to trial, however, and in the former case, counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between entering a guilty plea and going to trial. Wofford v. Wainwright, 748 F.2d 1505, 1508 (11th Cir. 1984). To impart such an understanding to the accused, counsel merely must make an independent examination of the facts, circumstances, pleadings and laws involved, and then offer counsel's informed opinion as to the best course to

be followed in protecting the interests of the client. Id.

The second prong of the Strickland test focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. Hill, 474 U.S. at 59. In other words, in order to satisfy the prejudice requirement, a defendant claiming ineffective assistance of counsel during the plea process must show that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. Id. The best way to evaluate whether there is a reasonable probability a defendant would have insisted on going to trial is to determine whether petitioner had available a defense that would likely have borne fruit at trial. Upshaw v. United States, No. 2:07-cv-111-FtM-33DNF, 2008 WL 638261 at *1 (M.D. Fla. Mar. 5, 2008) (citing Hill v. Lockhart, 474 U.S. 52, 59 (1985)).

## DISCUSSION OF MARTIN'S CLAIM

Martin raises a single claim in his Motion and contends that Attorney Ostrander provided ineffective assistance of counsel because he advised Martin to reject the initial plea agreement and move forward with the motion to suppress. (Doc. # 1 at 4). As articulated by Martin:

> Ostrander did knowingly ill-advise the defendant to
> withdraw - at the time- the current plea . . . '0-

11

> 10 yrs' . . . under the pretense that he (Attorney) could win the Motion to Suppress the unsigned and therefore unenforceable warrant.   The Petitioner declares that Attorney Ostrander did so for the sole purpose of securing a paying client (fee).

(Id. at 13).  Martin further indicates that he "would not have withdrawn the previous plea, had he been properly and fully advised by Attorney Ostrander." (Id.).  Martin also indicates that "he would have accepted the first plea offer if properly instructed by Attorney Ostrander" and "counsel provided incompetent advice not to accept the original plea." (Id. at 18).

### APPLICATION OF

### Missouri v. Frye, 132 S.Ct. 1399 (2012)

### AND

### Lafler v. Cooper, 132 S.Ct. 1376 (2012)

In both Frye and Lafler, the Supreme Court clarified that the Sixth Amendment right to effective assistance of counsel under Strickland v. Washington, 466 U.S. 668, 686 (1984), extends to the negotiation and consideration of plea offers that lapse or are rejected. See Frye, 132 S.Ct. at 1404-08; see also Lafler, 132 S.Ct. at 1384. The Court specifically held that counsel has a "duty to communicate formal offers from the prosecution to accept a plea," and that, in general, where such an offer is not communicated to the defendant,

counsel "[does] not render the effective assistance the Constitution requires." Frye, 132 S.Ct. at 1408. The Court also held that, in order to show prejudice under Strickland's two part test, a defendant must demonstrate a reasonable probability that: (1) he would have accepted a plea offer but for counsel's ineffective assistance; and (2) the plea would have resulted in a lesser charge or a lower sentence. Frye, 132 S.Ct. at 1409; see also Lafler, 132 S.Ct. at 1391 (concluding that the defendant had met those two requirements).

As discussed above, Martin had signed a plea agreement prior to his initial change of plea hearing; however, he reconsidered and backed out of his initial plea agreement and opted, instead, to move forward with a motion to suppress. The motion to suppress was ultimately denied, and Martin ended up entering into a less favorable plea agreement than the initial plea agreement.  Martin contends that "he would not have withdrawn the previous plea" but for Attorney Ostrander's counseling. (Doc. # 1 at 13).

It is a matter of record, however, that Martin made the decision to withdraw his initial, more favorable, plea agreement with full knowledge of the ramifications of his decision.  During the hearing held on January 4, 2011, the

13

prosecutor, the Magistrate Judge, and Attorney Ostrander each communicated with Martin such that Martin was aware that he was taking a tremendous risk. Judge Porcelli explained:

> As the last hearing, the prosecutor stated it is the government's intent that if you proceed forward on the motion to suppress, they will be withdrawing their offer of the plea agreement and not submitting it to you again. Further, what the prosecutor just stated now is that, if this case goes forward and the government is successful . . . it's their intent to enhance you under the statute. That enhancement would carry a maximum mandatory minimum sentence of life imprisonment based on your prior convictions. . . . [Y]our sentence would be all but guaranteed to be life. . . . Do you understand that sir?

(Criminal Doc. # 83 at 6-7).  Furthermore, Prosecutor Muench remarked:

> I'm doing this for his benefit.  I don't want him needlessly to spend the rest of his life in prison. Right now the statutory max, the most time he could get is ten years.  A judge couldn't do more than ten years.  . . . [H]e's taking a tremendous risk. If he wants to do it, that's fine.  I want him doing it knowingly, and I certainly want him not to, at some point down the road, claim that he had ineffective assistance of counsel because he didn't realize.

(Id. at 8).

At this juncture, and with these statements on the record, Martin cannot demonstrate that he rejected the initial plea agreement based on his attorney's failure to advise him. What Martin has provided to this Court in his § 2255 Motion is nothing more than his "after the fact testimony concerning his

14

desire to plead" as that offer was extended in the initial plea agreement. Diaz v. United States, 930 F.2d 832, 835 (11th Cir. 1991).

With the benefit of hindsight, it is easy for Martin to see that the offer extended in the initial plea agreement was more favorable than the deal that he ultimately accepted. However, Martin has not shown the Court that it was Attorney Ostrander's allegedly deficient performance that led Martin to reject the initial plea agreement. This Court cannot say with any certainty that Attorney Ostrander committed a legal error or demonstrated unprofessional conduct.

The facts show that the search warrant in question, indeed, lacked the signature of Judge Green.  While the Court ultimately denied the motion to suppress, there is nothing on the record to show that the motion to suppress was frivolous or unsupported. "To meet the deficient performance prong of Strickland, the defendant must show that counsel made errors so serious that he was not functioning as the counsel guaranteed by the Sixth Amendment." Frank v. United States, 522 F. App'x 779, 780 (11th Cir. 2013).  And, there is "a strong presumption that counsel's conduct fell within the range of reasonable professional assistance." Id.  Although Martin has not persuaded the Court that his choice to abandon

his previously entered plea agreement was made at Attorney Obstrander's insistence, even if he had done so, the Court would still be inclined to determine that Martin failed to show a deficient performance by Attorney Ostrander, because pursuing a motion to suppress evidence based on the absence of the judge approving the warrant is a "strategic decision" which is "virtually unchallengeable." Glover v. United States, 522 F. App'x 720, 723 (11th Cir. 2013).[1]  In addition, Martin has not shown that "no competent counsel would have taken the action that his counsel did take." Chandler v. United States, 218 F.3d 1305, 1314 (11th Cir. 2000). Thus, Martin has failed to show deficient performance by Attorney Ostrander.

In addition, when Martin walked away from the first plea agreement, he was "equipped with the knowledge that he potentially faced a sentence of life imprisonment," (that was made known by statements from Judge Porcelli, the prosecutor, and Martin's counsel) however, Martin still took the gamble of moving forward with the motion to suppress and foregoing the initial plea deal. Osley v. United States, 751 F.3d 1214, 1227 (11th Cir. 2014).  Martin therefore failed to sustain Strickland's prejudice prong.

---

[1]  This Court is loathe to "second guess strategic decisions . . . made by experienced criminal defense counsel" such as Attorney Ostrander. Glover, 522 F. App'x at 723.

Thus, the Court determines that Martin is not entitled to relief under <u>Frye</u> and <u>Lafler</u>.[2]   Martin's claims are wholly without merit, conclusory, and unsupported by the record.  His counsel did not render constitutionally ineffective assistance.  As Martin failed to meet both <u>Strickland</u> factors, his claim of receiving ineffective assistance of counsel is denied.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

Martin's 28 U.S.C. § 2255 Motion (Doc. # 1);(Criminal Doc. # 82) is **DENIED.**  The Clerk is directed to enter judgment against Martin and close this case.

## CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

The Court declines to issue a certificate of appealability because Martin has failed to make a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253(c)(2). Nor will the Court authorize Martin to proceed on appeal in forma pauperis because such an appeal would not be taken in good faith. See 28 U.S.C. § 1915(a)(3).

---

[2] The Court notes that, in his Motion, Martin made a simple, conclusory statement that his counsel filed an <u>Anders</u> brief, withdrawing his appeal over Martin's objection.  Martin does not address this statement further.  Martin failed to demonstrate any prejudice resulting from counsel's actions regarding the appeal.

17

Martin shall be required to pay the full amount of the appellate filing fee pursuant to § 1915(b)(1) and (2).

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, on this 6th day of August, 2014.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:
All Counsel of Record
Martin

18